IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| County of Charleston, South Carolina | ) | |
| --- | --- | --- |
| | ) | No. 2:17-cv-03496 |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| Finish Line Foundation II Inc, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter comes before the court on County of Charleston's motion for abstention. For the reasons set forth below, the court grants the motion.

## I. BACKGROUND

County of Charleston filed this suit against defendants Finish Line Foundation II ("Finish Line"), KRF XSL LLC ("KRF"), SC Investment Holdings LLC ("SC Investment"), and Kiawah River Farms LLC ("Kiawah River Farms"), Kiawah River Excavating and Earthworks LLC ("Earthworks"), Kiawah River Stables LLC ("Kiawah River") (collectively, "defendants") in order to stop their allegedly illegal development of land on Johns Island. In early September, 2017, the Charleston County Planning and Zoning Department ("Zoning") discovered that the following land development activities had occurred on defendants' properties without permits: "use of commercial land clearing equipment to clear and grub land, cutting and removal of protected trees, uncontrolled burning of vegetative waste, and resource extraction and mining." Compl. ¶¶ 12–14. County of Charleston claims that these activities violated the county's zoning requirements. Id. ¶¶ 14–16. It further claims that it informed defendants of these

1

violations through letters, personal meetings, and Stop Work Orders, and that on September 28, 2017, County of Charleston was assured that all work had ceased. Id. ¶ 19–24. County of Charleston claims that it dismissed the violations with the understanding that defendants would take corrective action and apply for the necessary permits, yet that land-clearing activities continued through November 2017. Id. ¶ 25. On November 21, 2017, Zoning issued 45 Ordinance Summons to defendants. Id. ¶ 26.

On November 30, 2017, County of Charleston filed this action in the County of Charleston Circuit Court, because it believes that defendants will not comply with the zoning regulations despite their promise to do so. Id. ¶ 27. It requests that the court find that defendants have violated certain Zoning and Land Development Regulations ("ZLDR") and enter an injunction to prohibit any further development, particularly the damage and removal of trees. Id. ¶¶ 28–31. Additionally, County of Charleston asks the Court to issue an order finding defendants in violation of ZLDR 6.4.23 and, pursuant to S.C. Code § 48-23-205, declare that defendants have been conducting forestry activities and are barred from applying for building permits, site disturbances, subdivision plans, or any other approval for development on their properties in Charleston County for five years. Id. ¶ 35. County of Charleston also sues Kiawah River Farms and Kiawah River Excavating and Earthworks, LLC ("Earthworks"), and Kiawah River Stables, LLC ("Kiawah River Stables") for operating in South Carolina without a business license. Id. ¶¶ 36–41.

Defendants removed the matter on December 28, 2017, based on diversity jurisdiction. ECF No. 1. County of Charleston filed its motion for abstention on January 26, 2018, ECF No. 8. On February 15, 2018, defendants filed their answer to the

2

complaint, along with several counterclaims, and on February 16, 2018, they filed their response to the motion for abstention. ECF Nos. 11 and 12. On February 23, 2018, County of Charleston filed a reply. ECF No. 16. On March 5, 2018, defendants filed a sur reply, ECF No. 19, and on March 12, 2018, County of Charleston filed its own sur reply, ECF No. 24. The motion has been briefed to within an inch of its life and is ripe for the court's review.

## II.   DISCUSSION

County of Charleston asks the court to abstain from exercising its jurisdiction of this case under the Burford Doctrine because this dispute revolves around "local county and state laws of public importance involving zoning and land use issues that should be decided by the County and State court." Pl.'s Mot. at 3. Defendants oppose the motion, arguing that there is not a sufficiently complex administrative scheme involved here to justify a Burford abstention and that their federal counterclaims should be heard by the district court. Defs.' Resp. at 3, 7. Specifically, defendants brought counterclaims alleging that County of Charleston's attempt to deprive defendants from using their property for five years constitutes an unconstitutional deprivation of defendants' rights to beneficial use of their property without just compensation, in violation of the Takings Clause. Defs.' Ans. ¶¶ 51–55. Defendants also argue that this requested five-year ban on development violates their due process rights, as they had no notice that the county could impose such a penalty, and as such the relevant statute or ordinance is unconstitutionally

vague.[1] Id. ¶¶ 59–63. The court agrees with County of Charleston and grants the motion to abstain.

In Burford v. Sun Oil Co., 319 U.S. 315, 320 (1943), the Supreme Court considered whether to enjoin the enforcement of the Texas Railroad Commission's order permitting the company Burford to drill for oil. The Court determined that if it chose to review the state of Texas's complex regulatory system for oil-drilling, it could cause "[d]elay, misunderstanding of local law, and needless federal conflict with the State policy." Burford, 319 U.S. at 326. The Court dismissed the complaint, finding that "[u]nder such circumstances, a sound respect for the independence of state action requires the federal equity court to stay its hand." Id. at 334. Several Supreme Court decisions since Burford have further developed this doctrine, requiring courts to decline to exercise their jurisdiction over the proceedings or orders of state administrative agencies:

> (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

---

[1] Defendants also technically raise an equal protection counterclaim, but unlike the counterclaims based on the Takings Clause and the Due Process Clause to which defendants devote several paragraphs, they only allege their equal protection counterclaim with a single sentence: "Defendants would show that the County has attempted to enforce various policies, statutes, and ordinances in a manner that violates Defendants' right to equal protection." Defs.' Ans. ¶ 39. In reality, defendants appear to incorporate their equal protection claim into their larger due process claim, see id. ¶ 65, and thus the court addresses the equal protection claim with its analysis of the due process claim.

New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 361 (1989) (internal quotation marks omitted). "The Burford abstention doctrine relaxes the otherwise 'unflagging' mandate of Article III when an adjudication may undermine the 'independence of state action on issues that are local and important to a state's sovereignty." Town of Nags Head v. Toloczko, 728 F.3d 391, 395 (4th Cir. 2013) (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 728 (1996)).

The Fourth Circuit has regularly applied the Burford Doctrine to disputes over local zoning regulations. See e.g., Pomponio v. Fauquier Cty. Bd. of Sup'rs, 21 F.3d 1319 (4th Cir. 1994). In Pomponio, a real estate developer brought suit regarding a local zoning commission's denial of his zoning permit application. In deciding to abstain from exercising jurisdiction over the case, the Fourth Circuit concluded that "local zoning and land use law is particularly the province of the State and that federal courts should be wary of intervening in that area in the ordinary case," because a federal court's "review of the question . . . would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Id. at 1327 (internal citations omitted). The court also relied on prior Fourth Circuit Cases in which "[t]he federal claims are really state law claims because it is either the zoning or land use decisions, decisional processes, or laws that are the basis for the plaintiffs' federal claims." Pomponio, 21 F.3d at 1326. It found it "clear that in most of these cases requiring Burford abstention, the federal claim cannot be untangled from the state or local zoning or land use law." Id. The court firmly established that federal courts should abstain under Burford from deciding cases where a plaintiff's federal claims "stem solely from construction of state or local land use or zoning law, not involving the constitutional validity of the same." Id.

Examples of cases which "reflect[ ] the presence of a genuine and independent federal claim" include religious prejudice, federal statutory preemption, and first amendment violations. Id.

The case at hand involves a dispute over the terms of County of Charleston's zoning regulations, as well as defendants' federal-law counterclaims. As made clear by Pomponio, disputes over land use and zoning laws fall squarely into the realm of cases over which federal courts should decline to exercise jurisdiction. Here, the County of Charleston seeks to enforce its zoning regulations and to have defendants adhere to the citations it issued regarding those regulations. Defendants' argue in response that, under the terms and definitions of the regulations, they have not violated any local law and should be permitted to continue developing their real property. Though the court has jurisdiction over this matter due to diversity of the parties, it chooses to abstain from exercising that jurisdiction under Burford and its progeny, because South Carolina courts have a greater interest in resolving this dispute over the interpretation and application of the county's zoning regulations than does a federal court. Leaving the matter to the state court system will better ensure a "coherent policy" with respect to this issue of "public concern."

Defendants argue that, regardless of the zoning issues, they have raised several constitutional counterclaims that should be addressed by a federal court. As discussed above, defendants have brought counterclaims based on County of Charleston's alleged violation of their due process and equal protection rights, as well as their rights under the Takings Clause:

> 39. Defendants would show that the County has attempted to enforce various policies, statutes, and ordinances in a manner that violates Defendants' right to equal protection.
>
> 51. The County—through either an unwritten policy; an unconstitutionally vague statute, S.C. Code Ann. § 48-23-205; or an unconstitutionally vague ordinance, Charleston County Code of Ordinances § 6.4.23—is attempting to deprive Defendants from any use of their real property for a five-year period. As stated in its complaint, the County's enforcement efforts include an attempt to bar Defendants "from applying for building permits, site disturbances, subdivision plans, or any other approval for development on their properties in Charleston County for five years." (Compl. ¶ 35.)
>
> 52. The County's efforts to enforce an unwritten policy, vague statute, or vague ordinance will totally deprive Defendants of any beneficial use of their real property.
>
> 53. Such denial of any and all economically viable use of Defendants' property is the "equivalent of a physical appropriation." Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1017 (1992).
>
> 54. The County has not provided any just compensation to Defendants for its attempted denial of any and all economically viable uses of their property.
>
> 60. Accordingly, the County's attempt to freeze Defendants' real property for a five year period through an unwritten County policy is done in violation of due process of law, as Defendants had no notice that the County could attempt to attach such a penalty.
>
> 61. Alternatively, if the County believes that its attempt to freeze Defendants' real property actually has support in a statute or ordinance, the Court should declare that such a statute or ordinance is unconstitutionally vague in violation of due process, as Defendants had no notice that the County could attempt to attach such a penalty.

Defs.' Ans.

Here, like in <u>Pomponio</u> and the cases cited therein, the federal claims cannot be untangled from the local zoning laws. For the due process claim, defendants first argue that County of Charleston's application of the zoning ordinances and related state statutes violate "due process of law, as Defendants had no notice that the County could attempt to

7

attach such a penalty," and that for the same reasons the "statute or ordinance is unconstitutionally vague." Id. ¶ 61. With this argument, defendants are not making an independent constitutional claim on par with religious prejudice or first-amendment violations. Rather, the entire "constitutional claim" stems from the local government's enforcement of its zoning regulations, which the court should decline to hear according to Pomponio.

Turning to the takings claim, the court decides not to adjudicate defendants' takings claim because, like due process claim, it "cannot be untangled from the state or local zoning or land use law." The court finds additional support for its decision not to hear the takings claim in Town of Nags Head v. Toloczko, 728 F.3d 391 (4th Cir. 2013). Nags Head involved a dispute over whether it was legal for the Town of Nags Head, North Carolina to declare that beachfront properties that encroached onto public trust lands were a nuisance and thus able to be regulated more strictly. Nags Head, 728 F.3d at 393. The Fourth Circuit ultimately chose not to abstain from exercising jurisdiction over the claims under Burford, but only after aptly summarized the law surrounding takings claims. To successfully bring a regulatory takings claim, a plaintiff must first obtain an inverse condemnation adjudication in state court before removal to federal court and must demonstrate that they were denied just compensation by a state court's final adjudication. Id. at 399 (citing Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 195 (1985)). The court in Nags Head found that the plaintiffs had failed to obtain this necessary adjudication, yet noted that "Williamson County is a prudential rather than jurisdictional rule" and thus "in some instances, the rule should not apply" and the court may still hear the case. Id. The court ultimately

decided to hear the takings claim because it had already determined not to abstain from exercising its jurisdiction under the remaining causes of action, and the court wanted to avoid "piecemeal litigation" that would "impose further rounds of litigation" on the defendants. Id.

Here, like in Nags Head, there is no evidence before the court that defendants have obtained an inverse condemnation adjudication in state court through which they were denied just compensation for the government's "taking" of their property. As such, the court cannot hear the takings claim unless it decides to exercise its jurisdiction due to the prudential nature of the rule. In Nags Head, the court relied on the prudential nature of the rule in order to hear the takings claim for the sake of judicial efficiency, because it had already decided to retain its jurisdiction over the remaining claims. Here, in contrast to Nags Head, the court decided not to exercise jurisdiction over the rest of the claims. The court will not hear the takings claim alone while it stays or dismisses the rest of the parties' claims, as it would result in exactly the type of "piecemeal litigation" the Fourth Circuit sought to avoid.

Based on the above discussion, the court abstains from exercising jurisdiction over the federal counterclaims, in addition to the original state-law claims.

### III.  CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to abstain and **REMANDS** the matter to state court.

**AND IT IS SO ORDERED.**

                                    **DAVID C. NORTON**
                                    **UNITED STATES DISTRICT JUDGE**

**April 30, 2018**
**Charleston, South Carolina**