IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| County of Charleston, South Carolina | ) | |
| | ) | No. 2:17-cv-03496 |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| Finish Line Foundation II Inc, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter comes before the court on Finish Line Foundation II ("Finish Line"), KRF XSL LLC ("KRF"), SC Investment Holdings LLC ("SC Investment"), and Kiawah River Farms LLC ("Kiawah River Farms"), Kiawah River Excavating and Earthworks LLC ("Earthworks"), and Kiawah River Stables LLC's ("Kiawah River") (collectively, "defendants") motion to stay the court's order remanding the case pending the Fourth Circuit's ruling on defendants' appeal of the order to remand, ECF No. 32. For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

County of Charleston filed this suit against defendants in order to stop their allegedly illegal development of land on Johns Island. In early September, 2017, the Charleston County Planning and Zoning Department ("Zoning") discovered that the following land development activities had occurred on defendants' properties without permits: "use of commercial land clearing equipment to clear and grub land, cutting and removal of protected trees, uncontrolled burning of vegetative waste, and resource extraction and mining." Compl. ¶¶ 12–14. County of Charleston claims that these

1

activities violated the county's zoning requirements.  Id. ¶¶ 14–16.  It further claims that it informed defendants of these violations through letters, personal meetings, and Stop Work Orders, and that on September 28, 2017, County of Charleston was assured that all work had ceased.  Id. ¶ 19–24.  County of Charleston claims that it dismissed the violations with the understanding that defendants would take corrective action and apply for the necessary permits, yet land-clearing activities continued through November 2017.  Id. ¶ 25.  On November 21, 2017, Zoning issued 45 Ordinance Summons to defendants.  Id. ¶ 26.

On November 30, 2017, County of Charleston filed this action in the Court of Common Pleas for the Ninth Judicial Circuit, because it believes that defendants will not comply with the zoning regulations despite their promise to do so.  Id. ¶ 27.  It requests that the court find that defendants have violated certain Zoning and Land Development Regulations ("ZLDR") and enter an injunction to prohibit any further development, particularly the damage and removal of trees.  Id. ¶¶ 28–31.  Additionally, County of Charleston asks the court to issue an order finding defendants in violation of ZLDR 6.4.23 and, pursuant to S.C. Code § 48-23-205, declare that defendants have been conducting forestry activities and are barred from applying for building permits, site disturbances, subdivision plans, or any other approval for development on their properties in Charleston County for five years.  Id. ¶ 35.  County of Charleston also sued Kiawah River Farms and Kiawah River Excavating and Earthworks, LLC ("Earthworks"), and Kiawah River Stables, LLC ("Kiawah River Stables") for operating in South Carolina without a business license.  Id. ¶¶ 36–41.

Defendants removed the matter on December 28, 2017, based on diversity jurisdiction.  ECF No. 1.  County of Charleston filed its motion for abstention on January 26, 2018, ECF No. 8, which the court granted on April 30, 2018, ECF No. 27.  That same day the clerk's office sent a certified copy of the remand order to the clerk of the Court of Common Pleas.  ECF No. 28–30.  On May 1, 2018, defendants filed their notice of appeal of the order remanding the case to state court, ECF No. 31, and a motion to stay remand pending the Fourth Circuit's decision on their appeal, ECF No. 32.  On May 11, 2018, County of Charleston filed its response, ECF No. 35, and on May 18, 2018, defendants filed their reply, ECF No. 36.

## II.  STANDARD

"A court has the power to stay proceedings, which is 'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  Doe v. Bayer Corp., 367 F. Supp. 2d 904, 914 (M.D.N.C. 2005) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)).  In exercising its authority to grant a discretionary stay, the court "must weigh competing interests and maintain an even balance."  Landis, 299 U.S. at 254, 255 (citing Kansas City S. Ry. Co. v. United States, 282 U.S. 760, 763 (1931)).  Furthermore, "[t]he party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative."  Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983).  When deciding on a motion to stay, a court considers four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially

injure the other parties interested in the proceeding; and (4) where the public interest lies.

Nken v. Holder, 556 U.S. 418, 426 (2009).

### III.   DISCUSSION

Defendants ask the court to stay its order remanding the case to state court until the Fourth Circuit rules on defendants' appeal of the court's order to remand.  Defendants argue that their appeal will likely succeed on the merits and that they will be irreparably harmed if the court does not stay its order to remand.  The court first addresses whether it has jurisdiction over this motion before considering whether defendants are entitled to a stay under the Nken v. Holder standard.

**A. Jurisdiction to Rule on the Motion to Stay**

Although neither party has questioned whether the court has jurisdiction to rule on the motion to stay, the court finds it necessary to address it considering that this case differs from the normal rules regarding a federal court's jurisdiction over a remanded matter.  Removal and remand proceedings in federal court are governed by 28 U.S.C. § 1447, which provides that:

> (c) A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.
> (d) An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise.

28 U.S.C. § 1447. In considering whether a court has jurisdiction to review its own remand orders or, by extension, to grant a stay of its remand order, courts have distinguished between remand orders based on lack of subject-matter jurisdiction under § 1447(c) and those remand orders based on other grounds outside of § 1447. For remand orders based on lack of subject-matter jurisdiction under § 1447(c), a court is divested of jurisdiction over a case when it has completed the remand process by having the district court clerk send a certified copy of the remand order to the state court. Vogel v. U.S. Office Prod. Co., 258 F.3d 509, 519–20 (6th Cir. 2001); see also Shapiro v. Logistec USA, Inc., 412 F.3d 307, 311 (2d Cir. 2005) ("Section 1447(d) establishes that once a section 1447(c) remand order has been mailed to the state court pursuant to the latter section, federal jurisdiction is at an end."); Hudson United Bank v. LiTenda Mortg. Corp., 142 F.3d 151, 159 (3d Cir. 1998) ("The mailing of a remand order divests the district court of jurisdiction when the remand is authorized by § 1447(c)."). "This view is premised on both the language of § 1447(c) and (d) and the need to establish a determinable jurisdictional event after which the state court can exercise control over the case without fear of further federal interference." Trans Penn Wax Corp. v. McCandless, 50 F.3d 217, 225 (3d Cir. 1995).

Section 1447(d) prohibits appellate courts from reviewing decisions to remand based on subject-matter jurisdiction. Shapiro, 412 F.3d at 311. Building on this rule, courts have also found that "the 'or otherwise' language of section 1447(d) bars district courts from reconsidering orders remanding cases on section 1447(c) grounds." Id. "But if the remand is not on section 1447(c) grounds, and therefore section 1447(d) does not apply, then the mailing of the remand order to the state court does not strip the federal

5

court of jurisdiction." Id. In other words, if remand is based on grounds other than subject-matter jurisdiction, or is otherwise permitted by federal statute, the court retains some level of jurisdiction over it for the purpose of reviewing its order to remand or staying its order to remand pending appeal. See Hudson United Bank, 142 F.3d at 159 (3d Cir. 1998) ("Because the remand in this case was authorized by § 1367(c), the mailing of the remand order to state court did not divest the district court of jurisdiction to entertain Hudson's motion for reconsideration."); Coffey v. Freeport-McMoran Copper & Gold Inc., 2009 WL 10672022, at *1–2 (W.D. Okla. May 8, 2009) ("The remand order here, while based on § 1447(c), is not subject to § 1447(d), [because the] Class Action Fairness Act of 2005 ("CAFA") gives the federal appellate courts discretionary jurisdiction to review CAFA remand orders.").

This court remanded the case based on abstention, not because it lacked subject-matter jurisdiction over the matter, which was properly before the court on diversity jurisdiction. See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 713 (1996) (allowing appeal of the district court's abstention-based remand order because it "does not fall into either category of remand order described in § 1447(c), as it is not based on lack of subject matter jurisdiction or defects in removal procedure"). Thus, as the case was not remanded under § 1447(c), the court was not automatically divested of its jurisdiction over the matter when it mailed the certified copy of the remand order to the Court of Common Pleas. Further, § 1447(d) does not prohibit the court from considering whether to stay its motion to remand pending the outcome of defendants' appeal.

B. <u>Nken v. Holder</u> Stay Factors

The court now considers whether it should stay its order remanding the matter to state court until the Fourth Circuit rules on defendants' appeal of the court's decision to abstain under <u>Burford</u>. The court relies on the four-factor test from <u>Nken v. Holder</u>:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

<u>Nken v. Holder</u>, 556 U.S. 418, 426 (2009).

### 1. Likelihood of Success

The first factor the court must consider when deciding whether to stay the remand is whether defendants have "made a strong showing that [they are] likely to succeed on the merits" of their appeal of this court's order remanding the case. <u>Nken</u>, 556 U.S. at 426. The court finds that defendants have not made such a showing.

Under the <u>Burford</u> abstention doctrine, courts may decline to exercise their jurisdiction over the proceedings of state administrative agencies:

> (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

<u>New Orleans Pub. Serv., Inc. v. Council of City of New Orleans</u>, 491 U.S. 350, 361 (1989); see <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315, 320 (1943) (dismissing complaint that would require the court to review Texas's complex regulatory oil-drilling system out of "resect for the independence of state action"). Many courts have held that "local zoning

7

and land use law is particularly the province of the State and that federal courts should be wary of intervening in that area" because a federal court's "review of the question . . . would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Pomponio v. Fauquier Cty. Bd. of Sup'rs, 21 F.3d 1319, 1327 (4th Cir. 1994)[1]; see MLC Auto., LLC v. Town of S. Pines, 532 F.3d 269, 282 (4th Cir. 2008) (citing Pomponio in support of the district court's decision to abstain under Burford from adjudicating a land use and zoning dispute). Even when a case involves federal claims, courts may still abstain under Burford if those "federal claims stem solely from construction of state or local land use or zoning law, not involving the constitutional validity of the same and absent exceptional circumstances . . . to avoid interference with the State's or locality's land use policy." Id. at 1328; see MLC Auto., LLC, 532 F.3d at 282 ("We have consistently found Burford abstention appropriate when the claim is really state law in federal law clothing."); MacDonald v. Vill. of Northport, Mich., 164 F.3d 964, 969 (6th Cir. 1999) (upholding the district court's decision to abstain from deciding a case that would infringe on Michigan's regulatory scheme to address disputes relating to land use and finding that "all of the MacDonalds' claims, including the takings claim under the United States Constitution, address the land use question[s]" and that Pomponio's analysis "remains sound.").

---

[1] "Quackenbush overruled Pomponio to the extent that Pomponio permitted a district court to dismiss an action for damages rather than enter a stay to await the conclusion of state proceedings." MacDonald v. Vill. of Northport, Mich., 164 F.3d 964, 969 (6th Cir. 1999) (citing Front Royal and Warren County Indust. Park Corp. v. Town of Front Royal, 135 F.3d 275, 282 (4th Cir.1998). However, "Quackenbush does not affect Pomponio's reasoning that federal courts should abstain under Burford from adjudicating equitable actions involving questions of land use." Id.

Defendants raise two arguments against the court's reliance on Pomponio in its abstention order.  First, defendants argue that the factual difference in background between Pomponio and the instant case undercuts the court's ability to rely on it.  In Pomponio, the plaintiff's complaint against county officials "alleged arbitrary behavior, false statements, abuse of authority, and misconduct by local officials during consideration of a preliminary subdivision plan submitted by" the plaintiff.  Pomponio, 21 F.3d at 1320.  "Because Pomponio's dispute with the Commission hinged on the interpretation of the local ordinance, [ ] Pomponio simultaneously appealed the Commission's decision to the Board of Supervisors . . . and to the Board of Zoning Appeals, for their determination of the correct interpretation of the local ordinance."  Id. at 1323. Pomponio then appealed the decisions of the Board of Supervisors and Board of Zoning Appeals to the local circuit court.  After Pomponio determined that he had no remedy available to him under state law, he brought a damages claim under 42 U.S.C. § 1983 in federal court.

Here, defendants seem to argue that, simply because the instant matter was not first argued before state administrative agencies before going to state court, like in Pomponio, the court should not have abstained.  This is a misconstrued reading of Pomponio.  The Fourth Circuit repeatedly reiterated the importance of leaving issues regarding "state and local zoning and land use <u>law</u>" to the states.  Id. at 1326–27 (emphasis added).  It did not narrow its holding by requiring courts to abstain only from cases involving issues that had previously been heard by state administrative bodies.  While state and local zoning and land use questions in this matter are not currently pending before an administrative tribunal, the court would still have to wade into the

9

County of Charleston's regulatory scheme for land use and zoning in order to rule on this case. The complaint requests that the court find that defendants have violated local zoning and land development regulations. For the court to consider these claims, it will have to analyze both the substance of the county's zoning regulations and whether defendants have acted in conformity with them. The County of Charleston has already established a thorough administrative scheme for handling zoning issues, and thus it is best left to a state court to interpret and apply this administrative scheme. This is the sort of administrative interference that the Burford doctrine enables to the court to avoid; whether the case originated from an administrative tribunal or a state court does not affect the court's decision to abstain from exercising jurisdiction over it.[2]

Next, defendants argue that their counterclaims, which "challenge the constitutional validity of the County's claimed authority . . . to freeze [their] property for a five-year period," should prevent the court from abstaining, since Pomponio also held that Burford abstention is inappropriate when the "constitutional validity" of a land use ordinance is at issue. ECF No. 32 at 2. This court's prior abstention order already addressed this issue. ECF No. 27 at 7–9. Pomponio held that courts should not abstain when there is a "genuine and independent federal claim," listing as examples religious prejudice, federal statutory preemption, and First Amendment rights. Pomponio, 21 F.3d at 1328. As discussed in this court's order, defendants' counterclaims "cannot be

---

[2] In support of their argument, defendants quote this court's decision in Gracious Living Corp. v. Colucci & Gallaher, PC, 216 F. Supp. 3d 662, 671 (D.S.C. 2016), that "[s]ince no South Carolina administrative agency action is at issue, Burford does not apply." However, Gracious Living involved a legal malpractice claim and had nothing to do with land use or zoning laws, and defendants' reliance on it is unavailing.

untangled from the state or local zoning or land use law" and are not on par with the examples of genuine and independent federal claims listed by Pomponio.

Thus, the court finds that defendants have failed to meet the high bar of making a "strong showing" that their appeal will succeed. This factor weighs heavily in favor of denying the motion to stay.

### 2. Irreparable Injury to Defendants

The next factor the court must consider in deciding whether to stay its remand order is whether defendants will suffer irreparable harm if the court does not grant their motion to stay. Defendants argue that if the court does not stay its order, their appeal of the court's decision to abstain under Burford will effectively become moot, which would deprive them of their right to judicial review and to have their case adjudicated by a federal court. ECF No. 32 at 3. This is not accurate, as there are many instances of a federal appellate court hearing an appeal of a decision to remand after the district court denied a motion to stay the remand pending appeal. See, e.g., Loftis v. United Parcel Serv., Inc., 342 F.3d 509, 513 (6th Cir. 2003), Thackeray v. Boats Express Corp., 188 F.3d 509 (6th Cir. 1999), LaFarge Coppee v. Venezolana De Cementos, S.A.C.A., 31 F.3d 70, 70 (2d Cir. 1994), Rubenstein v. State of Tex., 345 F.2d 916, 916 (5th Cir. 1965). Thus, the court finds that this factors weighs in favor of denying the motion to stay.

### 3. Substantial injury to County of Charleston

While defendants have failed to demonstrate that they will be irreparably harmed if the court does not stay its remand order, County of Charleston has demonstrated that it will suffer substantial injury if the case is stayed. The court agrees with County of

Charleston that the "issuance of a stay prevents the County from the enforcement of its zoning and land use ordinance." ECF No. 35 at 5. If County of Charleston's allegations are true, then defendants have been developing land on Johns Island in violation of local zoning and development ordinances. After many attempts at having defendants comply with these ordinances, County of Charleston filed suit in state court to enforce compliance. Resolution of their suit was delayed when defendants removed the matter to this court. Staying the remand order pending defendants' appeal would only further delay County of Charleston's ability to protect the residents of Johns Island from this allegedly unlawful development. This sort of harm would truly be irreparable, as construction and development of land is not easily undone, and these zoning ordinances exist to "protect the health, safety, and general welfare of existing and future residents of the County." Id. If defendants are allowed to continue development while the case is stayed, it could contribute to over-development on an island with limited land upon which construction should safely take place. The third factor weighs against granting the motion to stay.

### 4. Public Interest

Finally, the court must consider whether it benefits the public interest to stay the remand. The court finds it does not. State courts have an interest in deciding issues of state and local law. Additionally, the residents of Johns Island have an interest in having land use disputes resolved expediently by state courts. Thus, the court denies the motion.

## IV. CONCLUSION

For the reasons set forth above, the court **DENIES** the motion to stay.

**AND IT IS SO ORDERED.**

  
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 5, 2018**
**Charleston, South Carolina**